UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHI SPENCER, | ) |
|     Plaintiff; | ) |
| | ) |
| VS. | ) |
| | ) |
| DUKE ENERGY INDIANA, INC. | ) |
| and | ) |
| MICHAEL MILLER, | ) |
|     Defendants. | ) |

## COMPLAINT AND JURY DEMAND

Comes now the Plaintiff, by Counsel, and for her Complaint against the Defendants would state:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Americans With Disabilities (ADA) Act, 42 USC §12101, et seq., ADA Amendments Act of 2008; Title VII of the Civil Rights Act of 1964; Civil Rights Act of 1991 ; 29 CFR § 1601; 29 CFR §1604; and 29 CFR § 1630.

2. This Court has subject matter jurisdiction pursuant to 28 USC §§1331, 1343(3) and (4), 1376 and 1391(b).

## PROCEDURAL ISSUES

3. Prior to this Complaint, Plaintiff filed a claim with the EEOC and received her Right To Sue letter on April 20, 2015.

4. There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

## PARTIES

5. Plaintiff is a United States citizen residing in Hendricks County, Indiana.

6. Defendant Duke Energy Indiana, Inc. (herein Duke) is an Indiana corporation with a principal place of business located in Hendricks County, Indiana.

7. Defendant Michael Miller (herein Miller), at all times relevant to this complaint, is a United States citizen, a resident of Indiana, and an employee of Duke. Plaintiff is seeking damages against Miller both in his capacity as direct supervisor of Plaintiff while at Duke and in an individual capacity.

## BACKGROUND

8. Plaintiff was hired at Duke in 1985 as a worker in the mail room.

9. Plaintiff performed her job duties well and was promoted to different sections of the company, resulting in an eventual transfer to the supply chain division in 2000.

10. In 2006, Plaintiff became an energy buyer under the direct supervision of Miller.

11. Plaintiff continued to perform her duties well and received consistently high review scores from management.

12. In or about November 2007, the Plaintiff and Miller attended a business conference in Kentucky.

13. Defendant Miller placed his arm around the Plaintiff in an unwelcome fashion on three separate occasions during the conference, culminating with an invitation for the Plaintiff to join Miller in his hotel room while Miller was intoxicated.

14. These unwelcome advances were witnessed by Miller's supervisor Rick Hargrave and Penny Suesz, who both questioned Miller as to his actions.

15. Plaintiff rejected Miller's unwelcome sexual advances.

16. Miller's attitude to the Plaintiff because increasingly hostile as a direct result of Plaintiff's rejections of Miller's sexual advances.

17. In or about March 2008, while Plaintiff was working in the office after hours, Miller was at a bar and called the Plaintiff, requesting she come have a drink with him.

18. When Plaintiff refused, Miller became irate and exclaimed that he was Plaintiff's boss and that Plaintiff had to stop what she was doing to come drink with him.

19. Plaintiff again refused and reported Miller to Human Resources the next day.

20. Shortly after Plaintiff spoke with HR, Miller called the Plaintiff on her work line furious that he had reported her and was verbally abusive to the Plaintiff.

21. Duke sent a representative to meet with the Plaintiff on how to deal with Miller. The advice of Duke Energy to Plaintiff was to "not complain" to Miller about Plaintiff's overloaded

work load, to never ask for a raise from Miller and to never ask for assistance from Miller even though it is customarily acceptable practice for a subordinate employee to seek job-related guidance from her immediate supervisor.

22. Duke further explained that bar invitations were considered "team building" exercises. Plaintiff questioned the effectiveness and propriety of such an arrangement.

23. Miller's attitude toward the Plaintiff became increasingly hostile as a result of the Plaintiff's rejections of his sexual advances.

24. In or about December 2009, Plaintiff submitted to Miller a doctor's notice regarding Plaintiff's back condition; specifically, that Plaintiff was suffering from bulging discs in the upper and lower back.

25. The purpose of the doctor's notice was to advise Duke that Plaintiff's back condition was sufficient to warrant a reasonable accommodation regarding proper seating. The doctor recommended that Plaintiff be permitted to work from home where the Plaintiff owned a chair that did not aggravate the condition, as the work chairs did.

26. Plaintiff's job duties did not require being at Duke's facilities.

27. In February 2010, Plaintiff delivered another doctor's notice to Duke advising that Plaintiff needed to work from home.

28. Duke never gave permission to work from home nor advised the Plaintiff at all as to the status of her request for reasonable accommodation. Plaintiff was forced to work from home on her own accord without apparent objection from Duke.

29. In or about June 2010, Miller instituted a change in Plaintiff's job duties, requiring travel to two power stations in Indiana two days a week, each station requiring over an hour and a half of drive time.

30. Driving these distances caused the Plaintiff to suffer severe, consistent pain which was both physically and mentally taxing.

31. At the time of the new job functions, Miller was aware of Plaintiff's back condition and pain.

32. When Plaintiff attempted to discuss the impact of driving with Miller, Miller gave no response nor any desire to discuss the situation, which is consistent with how Duke advised he would react to requests for assistance.

33. As a direct result of Defendant's actions, Plaintiff suffered mental anguish and stress, requiring regular visitation with a mental health specialist.

34. In May 2011, Plaintiff went under the direct supervision of Patty Schaeffer, who herself was under Miller's supervision.

35. In July 2011, Plaintiff requested and received leave from work under short-term disability based on mental anguish and physical pain.

36. In Plaintiff's absence, the employee assigned to fulfill Plaintiff's duties was fully competent and experienced and familiar with the off-site stations Plaintiff was assigned to drive to.

37. That employee was not required to drive off-site to visit those stations, as the Plaintiff had been.

38. Plaintiff returned to work October 2011 on a half-day basis.

39. Plaintiff's job duties upon return were administrative in nature until Plaintiff returned to full time employment about February 2012.

40. Upon return to full time buyer duties, she was ordered to drive an extra day a week, now totaling three days a week to one off-site station ninety minutes away, despite no reduction in her prior reported back pain.

41. Schaeffer requested Plaintiff provide a doctor's notice to Schaeffer.

42. Plaintiff provided notice and Schaeffer rejected it out of hand and would not provide it to HR.

43. Approximately one week later, Schaeffer ordered Plaintiff drive <u>four</u> days a week without deviation.

44. Due to the extreme pain, Plaintiff was forced to pull into truck stops for relief.

45. Upon advising Schaeffer of such, Schaeffer demanded that Plaintiff not stop again and get to the off-site location.

46. Plaintiff contends that driving to the off-site location is not an essential job function, nor necessary to fulfill a buyer's duties.

47. Based on Plaintiff's information and belief, no other buyers were required to regularly drive to off-site locations as a job duty.

48. Based on Plaintiff's information and belief, the buyer job description was not amended to include driving until at least after August 2012.

49. Plaintiff's driving duties ended in late September 2012.

50. In October 2012, Plaintiff received notice that her off-site stations had changed.

51. The sites included a new facility in Edwardsport, Indiana, which operated under different, complex and unfamiliar systems.

52. Plaintiff received no prior training on the new site outside of a video discussing examples of how plants such as Edwardsport have exploded due to wrong parts being ordered.

53. As a result of the lack of formal training, Plaintiff was forced to learn on the job and was fortunate to strike up a positive, collaborative working relationship with a competent co-worker.

54. Plaintiff began to succeed in the role based on the aid and mentoring from the co-worker.

55. The competent co-worker was quickly replaced by a new worker with no experience.

56. Plaintiff's work product began to suffer as a result of inadequate training and mentorship.

57. Plaintiff continued to have significant physical and mental issues due to the stress of the ever-changing job duties.

58. Plaintiff went back onto short-term disability on or about February, 2014.

59. Plaintiff contacted HR in July 2014 advising her desire to return to work.

60. Plaintiff was subsequently advised that there were "no positions" at all available for her in her prior role or any other position within Duke Energy.

61. Duke's insurer Liberty Mutual placed her on long-term disability against Plaintiff's express desire without her knowledge.

62. In August of 2014, Plaintiff again contacted Duke to discuss a return to work and was advised that she was already on long-term disability.

63. Duke since has refused to return Plaintiff to her prior position or find an alternative suitable position for the Plaintiff.

## COUNT I – SEXUAL HARASSMENT BY DEFENDANT MILLER

64. Plaintiff incorporates all paragraphs above.

65. That Plaintiff is in a protected class, specifically that she is female.

66. That Miller made repeated unwelcome sexual advances and inappropriate verbal conduct of a sexual nature towards the Plaintiff.

67. That the Plaintiff repeatedly refused Miller's unwelcome sexual advances.

68. That Miller implemented several unfavorable conditions of employment upon the Plaintiff as a result of Plaintiff's repeated refusals.

69. That Miller's role as Plaintiff's supervisor placed him a position to carry out the threatened actions against the Plaintiff.

70. That Plaintiff's submission to Miller's conduct was made either explicitly or implicitly a term or condition of Plaintiff's employment.

71. That Plaintiff's submission to or rejection of Miller's conduct was used as a basis for Miller's employment decisions affecting the Plaintiff.

72. That Miller's conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance or creating an intimidating, hostile, or offensive working environment.

73. That Plaintiff suffered and continues to suffer harm as a result of Miller's intentional conduct.

WHEREFORE, Plaintiff seeks remedy from Miller in an amount and manner to be determined at hearing.

## **COUNT II – SEXUAL HARASSMENT BY DEFENDANT DUKE ENERGY**

74. Plaintiff incorporates all paragraphs above.

75. That Plaintiff timely and properly reported Miller's improper conduct to Duke Energy's Human Resources Department pursuant to company policy.

76. That Duke Energy was made aware of Miller's conduct towards the Plaintiff.

77. That the facts were sufficient to lead a person of ordinary prudence to investigate and remedy the conduct.

78. That Duke Energy willfully failed to follow company policy by failing to promptly and thoroughly investigating Plaintiff's claims against Miller.

79. That Duke Energy's failure constitutes a ratification of Miller's sexual harassment of the Plaintiff.

80. That the Plaintiff has suffered and continues to suffer harm as a result of Duke Energy's intentional conduct.

   WHEREFORE, Plaintiff seeks remedy from Duke Energy in an amount and manner to be determined at hearing.

## COUNT III – HOSTILE WORK ENVIRONMENT BY DEFENDANT DUKE ENERGY

81. Plaintiff incorporates all paragraphs above.

82. That Defendant Miller is an employee of Duke Energy.

83. That the Plaintiff was subjected to sexual advances, requests for sexual conduct, or other verbal or physical conduct of a sexual nature by Miller.

84. That Miller's conduct was unwelcome by the Plaintiff.

85. That Miller imposed several punitive unfavorable working conditions upon the Plaintiff in retaliation for Plaintiff's refusal to submit to Miller's sexual demands.

86. That the conduct was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create a sexually abusive or hostile work environment.

87. That the Plaintiff indeed perceived the working environment to be abusive or hostile.

88. That a reasonable woman in the Plaintiff's circumstances would consider the working environment to be abusive or hostile.

89. That the actions taken by Miller against the Plaintiff are of a level of severity above mere innocuous differences in the ways men and women routinely interact with members of the opposite sex nor intersexual flirtation.

90. That the totality of the circumstances, including the frequency and severity of Miller's harassing conduct unreasonably interfered with Plaintiff's work performance.

91. That Duke Energy was aware of the hostile work environment suffered by the Plaintiff and failed its duty to properly investigate and remedy the situation.

92. That the Plaintiff suffered and continues to suffer harm as a result of Duke Energy's actions.

   WHEREFORE, Plaintiff seeks remedy from Duke Energy in an amount and manner to be determined at hearing.

## COUNT IV – UNLAWFUL REPRISAL BY DEFENDANT DUKE ENERGY

93. Plaintiff incorporates all paragraphs above.

94. That the Plaintiff engaged in a protected activity; specifically reporting Miller to Duke's Human Resources department.

95. That Duke officials knew about the activity.

96. That the Plaintiff was subjected to an adverse employment action within a reasonable amount of time following the protected activity.

97. That there is a causal connection between the action and the protected activity.

98. That the Plaintiff suffered and continues to suffer harm as a result of Duke Energy's actions.

WHEREFORE, Plaintiff seeks remedy from Duke Energy in an amount and manner to be determined at hearing.

## COUNT V – FAILURE TO ACCOMMODATE BY DEFENDANT DUKE ENERGY

99. Plaintiff incorporates all paragraphs above.

100. That the Plaintiff is a qualified person with an actual disability, namely the physical and mental health impairments of multi-level cervical spondylosis with nerve root impingement; brachia neuritis; multi-level degenerative disc disease with joint instability, retrolisthesis and stenosis of the lumbar spine and sacrum; hypothyroidism; and Post-Traumatic Stress Disorder specifically due to Defendant's sexual harassment as diagnosed by a licensed physician.

101. That Plaintiff met the minimal qualifications of her employed position and was able to perform the essential functions of her job with or without an accommodation.

102. That Plaintiff has a record of having a physical disability and appropriately advised Duke Energy of these conditions.

103. That Plaintiff was regarded as an individual with a physical disability by Duke Energy.

104. That Plaintiff's disability substantially limits one or more major life activities including, but not limited to, the inability to be in a seated position for extended periods of time; working; driving; walking extended distances; mental focus and concentration;

impairment of the major bodily function of the thyroid and endocrine system; and impairment of the major bodily function of the neurological system.

105. That under the Americans with Disabilities Act of 1990, as amended, 42 USC §12101, ADA Amendments Act of 2008, and 29 CFR §§ 1601 and 1630, Defendants are required to provide reasonable accommodations to qualified individuals with disabilities.

106. That the Plaintiff suggested reasonable accommodations.

107. That the suggested accommodations would not result in an undue hardship to Duke Energy.

108. That Duke Energy failed to provide such.

109. That Duke Energy failed to conduct a proper interactive process to evaluate Plaintiff's needs.

110. That Duke Energy did not act in good faith in evaluating Plaintiff's accommodation request and did not work with Plaintiff to identify alternative solutions that would suffice.

111. That Duke Energy's failure to provide reasonable accommodations directly caused Plaintiff to not perform her job to her ability and was the direct cause of her termination.

112. That Plaintiff has suffered and continues to suffer harm as a result of Duke Energy's failure.

WHEREFORE, Plaintiff seeks remedy from Duke Energy in an amount and manner to be determined at hearing.


### COUNT VI – DISPARATE TREATMENT BY DEFENDANT DUKE ENERGY

113. Plaintiff incorporates all paragraphs above.

114. That Plaintiff is a member of a protected class, specifically she is an individual with an actual physical and mental health disability.

115. That the Plaintiff held a position within Duke Energy that she was performing adequately.

116. That though the Plaintiff consistently performed her job duty requiring extensive driving time to offsite locations, the Plaintiff's back and neck conditions made that excessive driving painful.

117. That Duke Energy was aware of Plaintiff's disabilities.

118. That during Plaintiff's time on disability leave, the replacement employee was not required to perform any offsite driving at all.

119. That Duke Energy did not consistently apply the rules between disabled and non-disabled employees.

120. That Duke Energy treated the Plaintiff differently due to her disability.

121. That the Plaintiff suffered and continues to suffer harm as a result of Duke Energy's actions.

WHEREFORE, Plaintiff seeks remedy from Duke Energy in an amount and manner to be determined at hearing.

Respectfully submitted this 17TH day of July, 2015.

/s/ Anthony Rufatto
Anthony Rufatto, 23114-49
7 Launch Way, Suite 1000
Fishers, IN 46036
(317) 438-1855
info@indylaborlaw.com